

# NUMBER 13-19-00290-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN THE INTEREST OF A.M.S., A CHILD

**On appeal from the 21st District Court
of Burleson County, Texas.**

## MEMORANDUM OPINION

**Before Justices Longoria, Hinojosa, and Tijerina
Memorandum Opinion by Justice Tijerina**

Appellant Tom Arve Solbakken challenges the trial court's rendition of a no-evidence summary judgment in his bill of review proceeding to set aside a judgment in a suit affecting parent-child relationship (SAPCR). By his sole issue, Solbakken argues that the trial court erred in granting appellee Melissa Leedy's motion for summary judgment because he presented evidence which created a genuine issue of material fact on each of the bill of review elements. We affirm.

# I.    BACKGROUND[1]

Solbakken is a Norwegian citizen and makes a living on vessels testing ocean systems. His occupation requires him to travel internationally frequently. While ashore in the United States in November 2003, he met Leedy in League City, Texas, after a night out. The two carried an intimate affair for approximately four days before Solbakken's departure to Europe. Solbakken returned to Texas in the Spring and Summer of 2004 and spent time with Leedy. Upon Solbakken's return to Europe, Leedy contacted Solbakken's employer and claimed she was pregnant.

Leedy's daughter A.M. was born on April 28, 2005, and Solbakken was present for the birth. Solbakken claims he was present for A.M.'s birthday in 2006 and 2007. According to Solbakken, when he learned Leedy began an intimate affair with Solbakken's coworker, he conducted his own DNA testing on September 13, 2007, to assuage his concern that A.M. may not be his child. The results revealed that he was not A.M.'s biological father. When Solbakken confronted Leedy with the results, he claims Leedy admitted to lying about Solbakken being A.M.'s father and tried to make excuses. Solbakken broke off the romantic relationship, but thereafter, the two rekindled the relationship sporadically throughout seven years.

On May 12, 2014, Leedy filed an original petition for divorce and SAPCR alleging Solbakken had previously signed an acknowledgment of paternity (AOP), which she filed with the Texas Bureau of Vital Statistics (TBVS) on January 11, 2006. Leedy claimed that

---

[1] This appeal was transferred to this Court from the Tenth Court of Appeals in Waco by order of the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. §§ 22.220(a) (delineating the jurisdiction of appellate courts); 73.001 (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer).

she and Solbakken "engaged in sexual intercourse in Texas, and [A.M.] may have been conceived by that act of intercourse." On July 14, 2014, Solbakken filed a special appearance, motion to dismiss, motion to adjudicate non-parentage, and, in the alternative, an original answer.

According to Solbakken, he was never married to Leedy,[2] genetic testing eliminated him as A.M.'s biological father, and no AOP was signed or filed with the TBVS. On June 10, 2015, Leedy responded that Solbakken's paternity is evidenced by an AOP filed with the TBVS on January 11, 2006, and that Solbakken had applied for a new birth certificate attesting to A.M.'s paternity in front of a notary. Leedy attached the AOP and birth certificate as evidence, which Solbakken challenged by asserting that both documents were fraudulent. According to Leedy, the AOP "was signed in front of an authorized court clerk, specifically Entity Code T009, and filed with [the TBVS]." Leedy argued that "the effect of [Solbakken] signing a State of Texas [AOP], is the equivalent of an adjudication of paternity of [A.M.] and confers on the acknowledged father, [Solbakken], all rights and duties of a parent, in accordance with TEX. FAM. CODE [ANN.] § 160.305(a)." Leedy further claimed that the genetic testing results are inadmissible because the testing was performed at a time when Solbakken was already A.M.'s adjudicated father pursuant to the AOP that was on file with the TBVS. *See* TEX. FAM. CODE ANN. § 160.621(c) (restricting the results of genetic testing when the child has an adjudicated father unless the mother and the presumed father consent to testing or the testing is ordered by court).

---

[2] Leedy nonsuited her petition for divorce when Solbakken responded that he was already married and had a family in Norway.

3

On February 6 and June 22, 2016, the trial court held hearings on Solbakken's motion to adjudicate non-parentage wherein he challenged the AOP, and ultimately, the trial court denied his request for genetic testing. The trial court set Leedy's SAPCR for a trial on September 29, 2017. On September 25, Solbakken's counsel filed a motion to withdraw from representation and a motion for continuance. The trial court granted Solbakken's counsel's request to withdraw but denied the request for a continuance. On September 28, Solbakken, pro se, requested a continuance, claiming he was in the middle of the Atlantic Ocean and would not be able to attend the trial. He requested additional time to hire another attorney. The trial court denied the motion for continuance, proceeded to trial, and determined that Solbakken defaulted when he did not appear for trial. On October 17, 2017, the trial court signed an order adjudicating Solbakken as the father of A.M., ordered him to pay $1,710 per month in child support, and $64,980 in retroactive support. Solbakken claims he did not receive notice of this order.

On July 26, 2018, Solbakken filed a bill of review in the trial court. On January 2, 2019, Leedy filed a no-evidence summary judgment alleging that Solbakken could not present evidence on any of the necessary elements for a bill of review. Solbakken responded and attached his affidavit; e-mails and text messages from Leedy; the contested AOP; the genetic testing results excluding him as A.M.'s father; and a paternity registry search from the TBVS stating that "no notice of intent to claim paternity has been located." Leedy responded that all Solbakken's claims "have already been heard, evaluated[,] and adjudicated by this Court after full hearing in 2016, when Solbakken's Motion for Genetic Testing was denied." Following an evidentiary hearing, the trial court

granted Leedy's no-evidence summary judgment motion thereby dismissing Solbakken's bill of review on March 25, 2018. Solbakken filed a motion for new trial, which was overruled by operation of law. This appeal followed.

## II.    BILL OF REVIEW

"A bill of review is brought as a direct attack on a judgment that is no longer appealable or subject to a motion for new trial." *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 504 (Tex. 2010). Upon the expiration of the trial court's plenary power, a judgment cannot be set aside by the trial court except by bill of review for sufficient cause, filed within the time allowed by law. *See* TEX. R. CIV. P. 329b(f). "To have the judgment set aside, the complainant must first meet certain pretrial burdens and then prevail on the merits." *Garza v. Att'y Gen*., 166 S.W.3d 799, 808 (Tex. App.—Corpus Christi–Edinburg 2005, no pet.); *Baker v. Goldsmith*, 582 S.W.2d 404, 409 (Tex. 1979) (describing complainant's pretrial prima facie burden of proof). To obtain an equitable bill of review, a petitioner must generally plead and prove: (1) a meritorious claim or defense to the judgment, (2) which the petitioner was prevented from making by official mistake or by the opposing party's fraud, accident, or wrongful act, (3) unmixed with any fault or negligence on the petitioner's own part. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751–52 (Tex. 2003). A prima facie meritorious claim is one that is not barred as a matter of law and will entitle the petitioner to judgment on retrial if no evidence to the contrary is offered. *Baker*, 582 S.W.2d at 408–09. Thus,

> the relevant inquiry is not whether 'the result would probably be different' on retrial as some Texas cases have indicated. Such a test would require the court to weigh the evidence. Rather, a prima facie meritorious defense is made out when it is determined that the complainant's defense is not barred

5

as a matter of law and that he will be entitled to judgment on retrial if no evidence to the contrary is offered.

*Id.*

The burden on a bill of review petitioner is heavy because it is fundamentally important that judgments be accorded some finality. *Garza*, 166 S.W.3d at 807–08; *King Ranch, Inc.*, 118 S.W.3d at 751; *see Layton v. Nationsbanc Mortg. Corp.*, 141 S.W.3d 760, 763 (Tex. App.—Corpus Christi–Edinburg 2004, no pet.). Consequently, a bill of review seeking relief from an otherwise final judgment must be scrutinized by reviewing courts "with extreme jealousy, and the grounds on which interference will be allowed are narrow and restricted." *Montgomery v. Kennedy*, 669 S.W.2d 309, 312 (Tex. 1984) (quoting *Alexander v. Hagedorn*, 226 S.W.2d 996, 998 (Tex. 1950)).

### III.   NO-EVIDENCE SUMMARY JUDGMENT

While abuse of discretion is the proper review standard for the ruling on a bill of review, *see Manley v. Parsons*, 112 S.W.3d 335, 337 (Tex. App.—Corpus Christi–Edinburg 2003, pet. denied), and that is the effect of the judgment here, Solbakken appeals from the trial court's granting of a no-evidence summary judgment. Thus, review of a summary judgment is the appropriate standard of review in this case. *Bowers v. Bowers*, 510 S.W.3d 571, 576 (Tex. App.—El Paso 2016, no pet.); *Clarendon Nat'l Ins. Co. v. Thompson*, 199 S.W.3d 482, 487 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *see also Tummel v. MMG Bank Corp.,* No. 13-19-00097-CV, 2020 WL 2213966, at *2–3 (Tex. App.—Corpus Christi–Edinburg May 7, 2020, no pet.) (mem. op.).

To prevail on a no-evidence summary judgment motion, a movant must allege that there is no evidence of an essential element of the adverse party's cause of action or

6

affirmative defense. TEX. R. CIV. P. 166a(i); *Timpte Inds., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). Once the motion is filed, the burden shifts to the non-movant to produce evidence raising a genuine issue of material fact on the elements specified in the motion. TEX. R. CIV. P. 166a(i); *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). If the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact, summary judgment is improper. *King Ranch,* 118 S.W.3d at 751. More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions," while less than a scintilla exists when the evidence is "so weak as to do no more than create mere surmise or suspicion." *Id.* "When reviewing a no-evidence summary judgment, we 'review the evidence presented by the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not.'" *Timpte Inds., Inc.*, 286 S.W.3d at 310 (citing *Mack Trucks*, 206 S.W.3d at 582). If a trial court's order granting summary judgment does not specify the grounds for the ruling, as in this case, the appellant bears the burden of negating all possible grounds for the trial court's ruling. *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 2001).

## IV. ANALYSIS

In his sole point of error, Solbakken argues that he "presented summary judgment evidence which created a genuine issue of material fact on each of the three required elements of his bill of review." Leedy argues that Solbakken lacked all three elements

required in a bill of review; therefore, the trial court did not err in its ruling.

As a threshold matter, we address the sufficiency of Solbakken's response to the motion for no-evidence summary judgment under the no-evidence standard of review. *Timpte Inds., Inc.*, 286 S.W.3d at 306*; Rico v. L-3 Commc'ns Corp.*, 420 S.W.3d 431, 439 (Tex. App.—Dallas 2014, no pet.). First, we must determine whether Solbakken brought forth "more than a scintilla of probative evidence to raise a genuine issue of material fact" that he has a meritorious defense. *See King Ranch*, 118 S.W.3d at 751. Solbakken asserted that he had a meritorious defense because (1) the AOP is invalid and unenforceable under the Texas Family Code § 160.302(a) and § 160.308(d), *see* TEX. FAM. CODE ANN. §§ 160.302(a), 160.308(d); (2) the AOP was forged by Leedy, reflects inaccurate information, and was not signed before a notary; and (3) there is a material mistake of fact based on genetic testing, proving he has a 0.0% chance of being A.M.'s biological father, which entitles him to challenge the AOP. *See id.* § 160.308(a). Alternatively, Solbakken claimed that if the AOP was signed, then it was signed under duress or fraud because of Leedy's "threatening or coercing" text messages and e-mails.

Solbakken attached the following evidence: (1) all the previous pleadings filed in this case, (2) his affidavit wherein he stated he did not sign the AOP in front of a notary or in a certified licensed facility; (2) messages from Leedy that Solbakken considered threatening and coercing; (3) the disputed AOP; (4) the results of genetic testing excluding him as A.M.'s biological father; and (5) a certificate of paternity registry search from the Texas state registrar stating that "no notice of intent to claim paternity has been located concerning [A.M.], born to Melissa Ann Leedy on 4/28/2005." In determining

whether Solbakken presented evidence sufficient to raise a genuine issue of material fact as to whether he made a prima facie showing of a meritorious defense to the default SAPCR order, we start with the AOP because it adjudicated Solbakken's paternity and serves as basis for the default SAPCR order. *See id.* § 160.305(a).

## A.    Valid AOP

Section 160.302 requires that an AOP: (1) be in a record; (2) signed or otherwise authenticated, under penalty of perjury by the mother and the man seeking to establish paternity; (3) state that the child does not have a presumed father, another acknowledged father, or an adjudicated father; (4) state whether there has been genetic testing and, if so, that the acknowledging man's claim of paternity is consistent with the results; and (5) state that the signatories understand that the acknowledgment is the equivalent of a judicial adjudication of paternity and that a challenge to it is permitted only under limited circumstances. *Id.* § 160.302(a). An AOP becomes effective on the child's date of birth or the filing of the document with the bureau of vital statistics, whichever is later. *Id.* § 160.304(c). "[A] valid [AOP] filed with the bureau of vital statistics is the equivalent of an adjudication of the paternity of a child and confers on the acknowledged father all rights and duties of a parent." *Id.* § 160.305(a). A signatory to an AOP may rescind an AOP by commencing a proceeding to rescind before the earlier of: (1) the 60th day after the effective date of the acknowledgment, as provided by § 160.304; or (2) the date of the first hearing in a proceeding to which the signatory is a party before a court to adjudicate an issue relating to the child, including child support. *Id.* § 160.307. Thereafter, a signatory "may commence a proceeding to challenge the [AOP] . . . only on the basis

of fraud, duress, or material mistake of fact." *Id.* § 160.308(a).

In his response to Leedy's no-evidence summary judgment motion, Solbakken first contended that the "AOP is not valid and thus, provides a meritorious defense in the original suit." Solbakken argued that pursuant to § 160.302(a), "[t]ypically, when an AOP is executed, the man and mother must go to a certified license facility that executes AOPs [and Solbakken] denies ever executing the AOP, much less before a notary or at a certified licensed facility." *See* 1 TEX. ADMIN. CODE § 55.404(a) (2013) (Office of the Attorney General) (providing that a mother and father may establish paternity by "voluntarily acknowledging paternity through a certified entity providing such services").

First, we note that in 2006, the Texas Administrative Code did not require the AOP to be completed or signed before a certified facility as Solbakken claims. Instead, mother and father must have presented proper identification to the certified entity to establish identity once the AOP was completed. *See* 1 TEX. ADMIN. CODE §§ 55.404(b), (c) (2002) (Office of the Attorney General, Voluntarily Acknowledging Paternity, *repealed by* 33 Tex. Reg. 1761, (2008). For an AOP to have been filed in 2006, mother and father must have (1) read the AOP and (2) "listen[ed] to or view[ed] a video presentation of the rights and responsibilities of a parent, and alternatives to and legal consequences of acknowledging or denying paternity." *Id.* § 55.404(a). Thereafter, "[b]oth the mother and father, separately or together, must then: (1) complete an [AOP] form; [and] (2) return the form to a certified entity." *Id.* "Both mother and father must present to the certified entity a valid driver license or another document (preferably a photo I.D.) to verify identity." *Id.* § 55.404(b). "The certified entity is responsible for filing the [AOP] form with the [TVBS]." *Id.* § 55.404(c).

10

Leedy presented evidence that the AOP bears Solbakken's signature, was signed before a notary under penalty of perjury, and was filed with the TVBS the very next day. According to the statute, the certified entity was "responsible for filing the [AOP] form with the [TVBS]" only after Leedy and Solbakken presented "to the certified entity a valid driver license or another document" to verify identity. *See* §§ 55.404(b), (c). Therefore, we reject Solbakken's assertion that the AOP was not executed before a notary or at a certified licensed facility considering the notarized—and filed—AOP. Accordingly, we conclude Solbakken failed to raise a question of fact as to whether he had a meritorious defense regarding the AOP being signed under penalty of perjury. *See In re S.R.B.*, 262 S.W.3d 428, 431 (Tex. App.—Houston [14th Dist.] 2008, no pet) ("The Uniform Parentage Act does not authorize a trial court to invalidate an AOP based solely on testimony questioning the male signatory's paternity absent rescission of, or successful challenge to, the AOP.").

Second, we note that in the trial court "no party argued or presented evidence that the AOP was not properly executed on its face" pursuant to § 160.302(a). *See id.* (providing that when the AOP rescission time expires, § "160.308 would govern any challenge to the AOP"). "Specifically, no party asserted that the statutory requirements for execution were not satisfied." *Id.* (holding that "[n]o signatory commenced a proceeding to rescind the AOP within the time period allotted by statute). Although Solbakken contests the validity of the AOP filed in January 2006, including his signature before a notary, the time period for rescission under § 160.307 had expired, and "a prima facie meritorious defense is made out when it is determined that the complainant's

11

defense is not barred as a matter of law." *See Baker*, 582 S.W.2d at 408–09; *In re S.R.B.*, 262 S.W.3d at 431; *see also In re J.A.*, No. 14-09-00249-CV, 2010 WL 2967718, at *3 (Tex. App.—Houston [14th Dist.] July 29, 2010 no pet.) (mem. op.). Because Solbakken did not challenge the AOP by the 60th day after the AOP was filed, this is no longer a meritorious defense, and Solbakken did not raise a scintilla of evidence on that argument because it was time-barred. *In re S.R.B.*, 262 S.W.3d at 431; *see also In re J.A.,* 2010 WL 2967718, at *3. Accordingly, Solbakken was barred, as a matter of law, from attacking the validity of the AOP on any grounds set forth § 160.302(a), such as the signature before a notary. *In re S.R.B.*, 262 S.W.3d at 431; *see* Tex. Fam. Code Ann. § 160.308(a).

## B.    Fraud

Alternatively, in response to Leedy's no-evidence motion for summary judgment, Solbakken argued that in the event the trial court found an executed AOP, it was the product of fraud or coercion. Texas Family Code § 160.308(a) states that "[a]fter the period for rescission under [§] 160.307 has expired, a signatory to an acknowledgment of paternity or denial of paternity may commence a proceeding to challenge the acknowledgment or denial only on the basis of fraud, duress, or material mistake of fact." Tex. Fam. Code Ann. § 160.308(a).

To support his contention that he did not execute an AOP, Solbakken attached a certificate of paternity search wherein on May 28, 2014, the TBVS certified that "a diligent search of the paternity registry ha[d] been made and no notice of intent to claim paternity ha[d] been located concerning [A.M.] born to [Leedy]." The Texas Paternity Registry provides a mechanism for a man who may have fathered a child to assert his parentage,

12

independent of the mother, and protect his parental rights by filing a notice of intent to claim paternity with the TBVS. *See id.* § 160.403. However, this intent to claim paternity is not synonymous with the execution of an AOP. *Compare id.* § 160.302 (providing the requirements of an AOP), *with id.* § 160.402 ("[A] man who desires to be notified of a proceeding for the adoption of or the termination of parental rights regarding a child that he may have fathered may register with the registry of paternity."). Solbakken asserts that the lack of an "intent to claim paternity" with the Texas Paternity Registry means the AOP at issue here was not timely filed with the TBVS. We disagree. While we agree with Solbakken that an intent to claim paternity was not filed, the record reflects that on January 11, 2006 an AOP was filed with the TBVS—one day after it was allegedly signed. Moreover, Solbakken stated, in his affidavit: "I was there for [A.M.'s] birthday in 2006 and in 2007, and in the summer I signed a paper that I could allegedly be [A.M.'s] father. This was signed in the house of the mother of [Leedy]." Thus, Solbakken acknowledges that he signed "a paper" alleging to be A.M.'s father.

Solbakken further argued that the trial court "could choose to invalidate the AOP if it were signed but signed under duress or fraud":

> It is clear from the emails and messages from [Leedy] that she placed duress on [Solbakken], seeking that he pay her thousands of dollars or that she would let his wife and mother know the extent of their extramarital affair. [Solbakken] contends that the AOP was executed by fraudulent means and duress, and requests that the AOP not be used by this court as the basis for paternity.

As proof, he attached a string of e-mails and text messages wherein Leedy stated she would expose their extramarital affair if Solbakken did not pay her large sums of money. However, the evidence Solbakken provided is dated 2013 and 2014. Solbakken did not

13

provide any evidence of threats or coercion for the time period contemporaneous with the execution of the AOP. Consequently, the 2013 and 2014 e-mails and text messages cannot serve as proof that on January 10, 2006, Solbakken was coerced into executing an AOP. Because Solbakken did not produce "more than a scintilla" of evidence that the AOP was a result of duress or fraud, we reject his alternative argument. *See King Ranch*, 118 S.W.3d at 751.

## C. Material Mistake of Fact

Lastly, Solbakken asserted that genetic testing proves there is a material mistake of fact, which provides a basis to challenge the AOP. *See* TEX. FAM. CODE ANN. § 160.308(a). Solbakken attached evidence of genetic testing, which confirmed that he is not A.M.'s biological father.

Under the family code, a "signatory of an [AOP] . . . may commence a proceeding to challenge the [AOP] . . . only on the basis of fraud, duress, or material mistake of fact" and that "proceeding may be commenced at any time before the issuance of an order affecting the child . . . ." *Id.* "[E]vidence that, based on genetic testing, the man who is the signatory of [an AOP] is not rebuttably identified as the father of a child . . . constitutes a material mistake of fact." *Id.* § 160.308(d). "A party challenging an acknowledgment of paternity or denial of paternity has the burden of proof." *Id.* § 160.308(c). However, if the "child has a presumed, acknowledged, or adjudicated father, the results of genetic testing are inadmissible to adjudicate parentage unless performed: (1) with the consent of both the mother and the presumed, acknowledged, or adjudicated father; or (2) under an order of the court . . . ." *Id.* § 160.621(c).

14

Here, the AOP adjudicated Solbakken's paternity of A.M. *See id.* § 160.305(a). Consequently, the results of genetic testing are inadmissible unless it was done with both Leedy and Solbakken's consent or by order of the court. *See id.* § 160.621(c). The record reflects that the trial court specifically denied Solbakken's request for genetic testing, and Solbakken did not provide the trial court with evidence that Leedy consented to such testing.[3] Thus, the results of genetic testing are inadmissible. "Evidence offered in support of or in opposition to a summary judgment motion must be in admissible form to constitute competent summary judgment evidence." *Petty v. Citibank (S.D.) N.A.*, 218 S.W.3d 242, 244 (Tex. App.—Eastland 2007, no pet.); *Martinez v. City of San Antonio*, 40 S.W.3d 587, 591 (Tex. App.—San Antonio 2001, pet. denied) ("[T]he nonmovant may not rely on evidence that is inadmissible or amounts to no more than a scintilla.").

Moreover, Solbakken asserted he had a meritorious defense: "[I]t was apparent to both parties that the child was not biologically [Solbakken's]" because "[Solbakken] is a Caucasian, Norwegian national alleged to be the father of an African-American young woman." On appeal, he invites us to determine that the circumstances surrounding the execution of the AOP constituted a "material mistake of fact" because he was under the impression that A.M. could biologically be his child, but genetic testing later revealed he is not. We decline this invitation, and we note that Solbakken admitted—in his affidavit—

---

[3] Specifically, the trial court's order stated:

On February 12, 2016 and June 22, 2016, the Court heard the Motion for Genetic Testing . . . [and] finds that the conduct of [Solbakken] estops [Solbakken] from denying parentage and it would be inequitable to disprove the father-child relationship between [A.M.] and [Solbakken] and therefore [Solbakken's] Motion for Genetic Testing is DENIED under section 160.608 of the Texas Family Code.

15

to signing a document alleging to be A.M.'s father despite their differences in race.[4] *See In re C.S.*, 277 S.W.3d 82, 86 (Tex. App.—Amarillo 2009, orig. proceeding) (providing that the record evidence should constitute some evidence on which reasonable minds could disagree as to whether the adjudicated father labored under a material mistake of fact when he executed the AOP). When viewed in the light most favorable to Solbakken, as these genetic test results are inadmissible, they do not constitute more than the scintilla of probative evidence required to raise an issue of fact as to whether Solbakken executed an AOP under circumstances constituting a "material mistake of fact." *See King Ranch*, 118 S.W.3d at 752; *see also* TEX. FAM. CODE ANN. § 160.621(c).

**D.    Summary**

In sum, we conclude that Solbakken was barred as a matter of law from challenging the AOP based on its validity under § 160.302's execution requirements. Furthermore, we conclude Solbakken did not raise a genuine issue of material fact as to whether the AOP was executed as a result of fraud or duress. Lastly, because the results of genetic testing are inadmissible, reasonable and fair-minded people would not differ in their conclusions as to whether Solbakken raised a meritorious defense based on a material mistake of fact. Accordingly, the trial court's rendition of Leedy's no-evidence summary judgment was proper. *See King Ranch*, 118 S.W.3d at 752. We overrule Solbakken's sole issue.[5]

---

[4] We note that Solbakken has also admitted to spending some time with A.M., such as appearing at her birthdays.

[5] Because Solbakken did not present more than a scintilla of evidence of a meritorious defense, we need not address the other elements of the bill of review because they are not dispositive. *See* TEX. R. APP. P. 47.1.

16

## V.     CONCLUSION

We affirm the judgment of the trial court.

JAIME TIJERINA
Justice

Delivered and filed on the
3rd day of June, 2021.

17